UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
(Columbia Division)

| | |
|---|---|
| **LINDA ALFORD WOOTEN,** | Case No. _____ |
| | |
| Plaintiffs, | **<u>CLASS ACTION</u>** |
| | |
| | **CLASS ACTION AND REPRESENTATIVE ACTION COMPLAINT FOR DAMAGES, EQUITABLE AND INJUNCTIVE RELIEF** |
| v. | |
| | |
| **TOYOTA MOTOR NORTH AMERICA INC.,** a California corporation; **TOYOTA MOTOR ENGINEERING & MANUFACTURING NORTH AMERICA, INC.,** a Kentucky corporation; **TOYOTA MOTOR MANUFACTURING KENTUCKY, INC.,** a Kentucky corporation; **TOYOTA MOTOR SALES U.S.A., INC.,** a California corporation; and **TOYOTA MOTOR CORPORATION,** a Japanese corporation, | **<u>JURY TRIAL DEMANDED</u>** |
| | |
| Defendants. | |

**CLASS ACTION**

This is a class action seeking damages, restitution and equitable relief for consumers who have purchased a Toyota or Lexus vehicle containing the electronic throttle control system known as the ETCS-Intelligent System (ETCS-i). Vehicles equipped with ETCS-I have a dangerous propensity to suddenly accelerate without driver input and against the intentions of the driver. This increased propensity for runaway acceleration stems in part from the ETCS-I's vulnerability to electronic "confusion" in

the ETCS-i sensors and electronics processors.  Despite knowledge of such risks, Toyota failed to provide necessary electronic and mechanical failsafes to enable drivers to bring their vehicles back under control if a runaway event should occur, as many other vehicle manufacturers have done.  The Plaintiff brings this action on behalf of herself, and all others similarly situated.

Plaintiff  LINDA ALFORD WOOTEN, by her undersigned counsel makes the allegations in this Class Action upon actual knowledge, and as to all other matters upon information and belief and the investigation of her counsel.

## JURISDICTION AND VENUE

1**.**    This action asserts claims under South Carolina law for negligence, breach of express and implied warranties, and for unjust enrichment.

2.    The Court has jurisdiction pursuant to 28 U.S.C. § 1332(d) because the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interests and costs and is a class action in which the members of the Class are citizens of a different state than the Defendants.

3.    The Plaintiff Linda Alford Wooten is a resident of Lexington County, South Carolina.  Defendant TOYOTA MOTOR CORPORATION is a Japanese corporation. Defendant TOYOTA MOTOR ENGINEERING AND MANUFACTURING NORTH AMERICA, INC. is a Kentucky corporation. TOYOTA MOTOR MANUFACTURING KENTUCKY, INC**.,** a Kentucky corporation ("TMMK"); Defendant TOYOTA MOTOR NORTH AMERICA, INC. is a California corporation.  Defendant TOYOTA MOTOR SALES U.S.A., INC., is a California corporation.  Defendant  TMMK was involved,

2

directly or indirectly, in the manufacture and assembly of the 2009 Toyota Camry owned by Plaintiff, as well as all other Camrys that are the subject of this action.

4.     The Court has personal jurisdiction over the Toyota Defendants because they conduct substantial business in the State of South Carolina, have sufficient minimum contacts with the State, and otherwise avail themselves of the markets in this State, through promotion, sale, marketing, and distribution of their products and services in this State, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.  The State of South Carolina has a substantial and paramount interest in preventing the practices alleged herein from occurring in South Carolina.

5.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because, among other things, a substantial portion of the acts and omissions complained of occurred in this judicial district.  The Plaintiff Linda Alford Wooten is a resident of the City of West Columbia, in Lexington County, South Carolina, and purchased a Toyota vehicle from a Toyota dealer located in Lexington County, South Carolina Toyota vehicles are marketed, sold, and serviced by Toyota throughout this judicial district, including but not limited to Lexington County, South Carolina.

## PRELIMINARY STATEMENT

6.     The Plaintiff seeks damages, restitution and equitable relief for herself and on behalf of all others similarly situated, who have purchased a Toyota vehicle containing the electronic throttle control system known as the ETCS-Intelligent System ("ETCS-i") due to the dangerous propensity for vehicles so equipped to suddenly accelerate without driver input and against the intentions of the driver, coupled with Toyota's failure to

3

provide necessary electronic and/or mechanical failsafes to enable drivers to bring such vehicles back under control if a runaway event should occur. This increased propensity for runaway acceleration stems in part from the ETCS-i's vulnerability to transient signals, which can cause confusion in the ETCS-i sensors and electronics processors.

7.    The Plaintiff Linda Alford Wooten is the owner of a 2009 Toyota Camry LE, which is equipped with the ETCS-i.

8.    Runaway acceleration events almost always begin suddenly and without warning; the throttle opens so rapidly it is wide open before the driver has time to react; the automobile continues out of control despite desperate braking efforts by the driver; and, unless the driver manages to disengage the engine quickly, the likelihood of a catastrophic outcome is great. Consequently, manufacturers must provide an electronic or mechanical failsafe to allow the driver to return the vehicle safely under control when faced with such an emergency. Toyota has failed to provide such a failsafe.

9.    Reports of unintended accelerations of vehicles began to increase significantly in 2002, when Toyota began installing the ETCS-i in a broad range of its vehicle lines.

11.    ETCS-i-equipped vehicles are sometimes referred to as "throttle-by-wire" or "drive-by-wire" because the ETCS-i has no mechanical linkage between the accelerator pedal and the throttle plate in the engine.

12.    It soon became apparent that models with the ETCS-i were experiencing a failure rate significantly greater than other models. As the number of reports involving Toyota models with "throttle-by-wire" electronics grew, the claimed injury and death toll also increased alarmingly. However, Toyota and Toyota dealers continue to deceptively

4

market ETCS-i-equipped vehicles despite knowledge that they are unreasonably dangerous by virtue of their design.

13.     By marketing vehicles equipped with ETCS-i such as the 2009 Toyota Camry LE, without incorporating an electronic or mechanical failsafe similar to those provided by Toyota's manufacturing competitors, Toyota has dangerously misled the Plaintiffs and thousands of unsuspecting consumers throughout South Carolina.

14.     Toyota engaged in unfair and deceptive marketing of its ETSC-i-equipped vehicles both in direct communications to its consumers and in misinformation supplied by Toyota to National Highway Traffic Safety Administration's ("NHTSA") investigators.

15.     When the NHTSA opened an investigation[1] of 2002 and 2003 model year Camrys (all equipped with ETCS-i), the safety agency described the defect alleged by Toyota owners:  "Allegations of (A) an engine speed increase without the driver pressing on the accelerator pedal or, (B) the engine speed failing to decrease when the accelerator pedal was no longer being depressed  --  both circumstances requiring greater than expected brake pedal application force to control or stop the vehicle and where the brake system functioned normally."

16.     At the outset of its investigation, NHTSA asked Toyota to "state the number of each of the following, received by Toyota, or of which Toyota is otherwise aware, which relate to, or may relate to, the alleged defect in the subject vehicles:

a.      Consumer complaints, including those from fleet operators;

b.      Field reports, including dealer field reports;

---

[1] Defect Petition DP04-003; Investigation PE04-021

     c.      Reports involving a crash, injury, or fatality, based on claims against the manufacturer involving a death or injury; notices received by the manufacturer alleging or proving that a death or injury was caused by a possible defect in a subject vehicle; property damage claims; consumer complaints; and/or field reports;

     d.      Property damage claims;

     e.      Third-party arbitration proceedings where Toyota is or was a party to the arbitration; and

     f.      Lawsuits, both pending and closed, in which Toyota is or was a defendant or codefendant.

For subparts 'a' through 'd,' show each category (e.g., consumer complaints, field reports, etc.) separately.  Multiple incidents involving the same vehicle are to be counted/shown separately.  Multiple reports of the same incident are also to be counted/shown separately (i.e., a consumer complaint and a field report involving the same incident in which a crash occurred are to be shown as a crash report, a field report and a consumer complaint)."

    17.    Toyota reported 123 complaints that it said "may relate to the alleged defect;" however, Toyota *intentionally excluded* from its response the following categories of complaints, among others:

    "(1)    an incident alleging uncontrollable acceleration that occurred for a long duration;[2]

    "(2)    an incident in which the customer alleged that they could not control a vehicle by applying the brake; and

    "(3)    an incident alleging unintended acceleration occurred when moving the shift lever to the reverse or the drive position."

---

[2] "long duration" is defined as lasting longer than one (1) second

18.    Toyota thus *deceptively concealed* from NHTSA as well as from the news media and consumer safety groups that monitor NHTSA safety defect investigations, an entire universe of potentially relevant customer complaints.  For example, the report from a driver who had experienced a sudden acceleration which carried him/her for a considerable distance, would not be seen by NHTSA because Toyota did not include it in its response, since it occurred for a "long duration."  Similarly, a driver who reported that he/she was standing on the brake and could not overcome the open throttle would have had his/her report excluded from the investigation.

19.    NHTSA's investigation of the alleged defect in 2002 and 2003 Camrys was based largely on information supplied by Toyota, including a cleverly-limited group of customer complaints and assertions by the company that its dealers and manufacturer representatives had "failed to identify a fault within the vehicle."  NHTSA conducted no testing of the integrity of the ETCS-i in terms of its vulnerability to transient electronic interference; nor did NHTSA conduct any tests as to the efficacy of the braking system in an open-throttle condition.  NHTSA closed its investigation, stating that "[a] defect trend has not been identified at this time and further use of agency resources does not appear to be warranted."[3]

20.    Complaints and incident reports from Toyota customers who had experienced sudden, unintended accelerations continued to come in to NHTSA and Toyota in substantial numbers after the NHTSA investigation was closed.  Both the agency and the manufacturer issued statements blaming the driver's-side floor mat as the cause, knowing that floormats were almost never the cause.

---

[3] ODI Resume, PE04-021, Date Closed 07/22/2004

21.    In 2007, and prompted by the failure rate of Toyota models, NHTSA's Office of Defects Investigation ("ODI") opened an engineering analysis of 2007 Lexus ES-350 vehicles.  According to the report, the purpose of the engineering analysis was to:

- Determine whether reported incidents of unintended acceleration were caused by a vehicle system malfunction or mechanical interference;

- Understand and document the effects of unintended acceleration as they impact controllability of the vehicle; and

- Document potential difficulties experienced by the operator while attempting to regain control of the vehicle.

22.    A section of the NHTSA report entitled "Analysis of the Effects of Unintended Acceleration on Vehicle Control," urgently supports this action under the Consumers Legal Remedies Act.  The agency's analysis began as follows:

> The safety consequences of an unsecured rubber floor mat trapping the accelerator pedal with the vehicle in gear can be severe.  With the engine throttle plate open, the vacuum power assist of the braking system cannot be replenished and the effectiveness of the brakes is reduced significantly.  During trapped throttle acceleration testing, several methods to defeat acceleration proved effective *but not necessarily intuitive*.  (Emphasis supplied).

23.    The engineering analysis described the first redundancy as follows: "Application of the brake – Significant brake pedal force in excess of 150 pounds was required to stop the vehicle, compared to 30 pounds required when the vehicle is operating normally.  Stopping distances increased from less than 200 feet to more than 1,000 feet.  *This required brake pedal force is beyond the physical capabilities of most drivers." (emphasis added).*  This indicates a pressing need for an electronic or mechanical failsafe.

8

24.    On September 29, 2009, following the widespread publicity surrounding the apparent sudden acceleration of a 2009 Lexus ES350 that resulted in a four-fatality crash near San Diego, California, Toyota issued a "Safety Advisory," saying that the company had "taken a closer look" at the potential for the accelerator to get "stuck in the full open position" *due to interfering floor mats*.  The advisory stated that the company would soon be recalling certain 2007 – 2010 Camrys and Lexus vehicles, 3.8 million in all, to address the issue -- the largest recall in Toyota's history and the sixth largest in the United States.

25.    Toyota's advisory is dangerously misleading, for the following reasons, among others:

- By representing that only a trapped floor mat can cause a loss of throttle and braking control, it lures owners of models with no driver's side floor mat into believing there is no possibility of a potentially catastrophic loss of throttle and braking control.

- The advisory also misleads owners with a driver's-side floor mat into believing that, in the event of a sustained near-wide-open throttle malfunction, the first response should be to visually determine if the floor mat is interfering with the accelerator pedal.  This will, in many cases, exacerbate the driver's loss of control as he/she will lose valuable time in shifting to neutral and/or turning off the ignition.

26.     Without the remedies provided by South Carolina law there is a real and imminent danger to the public at large from the subject Toyota models that will continue without the benefit of: (1) a warning to Toyota owners as to the dangers presented by the defects in the system that allow sudden, unintended acceleration, (2) cogent instructions from Toyota to drivers of those vehicles as to the steps to be taken in the event of a sudden, uncontrollable loss of throttle control, (3) the implementation by Toyota of a failsafe device that would ensure that the system will return the throttle to idle or immediately disengage the engine, and (4) the installation by Toyota of an electronic component in each at-risk vehicle that senses the conditions which produce an unintended acceleration and prevents such an occurrence.

27.     The Toyota models at risk ("Class Vehicles") include, *but are not limited to*, the following:

Toyota Camrys from Model Year ("MY") 2002 though 2009

Toyota FJ Cruisers from MY 2003 through 2008

Toyota Tacoma pickup trucks from MY 2003 through 2008

Lexus models from MY 1998 through 2009

Toyota Tundra pickup trucks MY 2000 through 2009

Toyota 4Runner SUVs from MY 2001 through 2009

Toyota Avalons from MY 2005 through 2009

Toyota Land Cruisers from MY 2001 through 2009

Toyota RAV-4s from MY 2005 through 2009

Toyota Sequoias from MY 2001 through 2009

Toyota Siennas from MY 2004 through 2009

Toyota Corollas from MY 2005 through 2009

Toyota Highlanders from MY2004 through 2009

**THE PARTIES**

28.    The Plaintiff Linda Alford Wooten is a resident of Lexington County, South Carolina.  In September 2008, Plaintiff Wooten purchased a 2009 Toyota Camry LE from Toyota Center, located in the City of West Columbia, in Lexington County, South Carolina.  Plaintiff Wooten paid a purchase price in excess of $25,000 for the new vehicle.  In reality, the 2009 Toyota Camry LE is unreasonably dangerous as designed and manufactured by Toyota.

29.    Plaintiff did not learn of the vehicle's unique propensity for runaway acceleration, or that Toyota failed to provide adequate failsafes until after Toyota issued a safety warning regarding the floor mats in certain Toyota vehicles.

30.    As a consequence of Defendants' unlawful and misleading business practices, Plaintiff has suffered harm which includes being deprived of the full use, benefit, and value of their vehicles.

31.    Plaintiff appears in this action on behalf of herself and on behalf of all others similarly situated.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

33.    Toyota vehicles containing the ETCS-i system have been purchased throughout South Carolina, and are in wide use on South Carolina roads.

34.    Consumers purchasing a Toyota vehicle containing the ETCS-i are not informed of the heightened propensity for runaway acceleration in ETCS-i-equipped

11

vehicles.  Nor are they informed that Toyota does not incorporate an adequate electronic or mechanical failsafe into its design.

35.    Toyota had actual knowledge that ETCS-i-equipped vehicles, as currently designed and manufactured, are unreasonably dangerous to a person who can be expected to them.

36.    ETCS-i-equipped vehicles are unreasonably dangerous due to the following acts and omissions by the Defendants:

a.    On the part of each Defendant, failure properly and adequately to design the Class Vehicles and the systems, components, and parts thereof, including, but not limited to, the electronic engine control, the cruise control and other components of the Engine Control Module, collectively denominated by the Toyota entities as the Electronic Throttle Control System-Intelligent ("ETCS-i), and the braking system;

b.    On the part of each Defendant, failure properly and adequately to install a fail-safe software component and/or mechanical safeguard against sudden, unintended acceleration;

c.    On the part of each Defendant, failure properly and adequately to specify components and component systems for the Class Vehicles that would shield the sensors from transient signals that confuse the ETCS-i and thereby ensure that the vehicle's throttle responded to the intentions and actions of the driver;

d.    On the part of each Defendant, failure properly and adequately to test the Class Vehicles and the systems, components, and parts thereof, specifically including, but not limited to, the electronic engine control, the cruise control and other components of the Engine Control Module, the ETCS-i and the braking system;

e.    On the part of each Defendant, failure properly and adequately to perform and/or heed an adequate failure mode and effects analysis (FMEA) or fault tree analysis (FTA) of the Class Vehicles and the systems, components,

12

and parts thereof, specifically including, but not limited to, the ETCS-i, the cruise control and other components of the Engine Control Module, and the braking system;

f.      On the part of each Defendant, failure properly and adequately to manufacture, fabricate, and assemble the Class Vehicles and the systems, components, and parts thereof, specifically including, but not limited to, the electronic engine control, the cruise control and other components of the ETCS-i, and the braking system;

g.      On the part of each Defendant, failure properly and adequately to warn of the dangers attendant upon use of the Class Vehicles, specifically including, but not limited to, the extreme risk to the driver and occupants of a loss of control of the throttle and resultant sudden, unintended acceleration of the vehicle, with the attendant risk of severe bodily injury and/or death.

h.      Prior to and during the design, manufacturing, marketing and sale of the subject vehicle and thereafter, the Toyota Defendants knew, or in the exercise of reasonable care should have known, that other feasible and safer design alternatives were available to them which would have significantly reduced the risk of sudden, unintended accelerations and the lack of efficacy of the braking system under such conditions.  Defendants, and each of them, negligently failed to utilize such other and feasible safer designs in their design of the electronic engine control, the cruise control and other components of the ETCS-i, and the braking system in the Class Vehicles;

## CLASS ALLEGATIONS

37.    Plaintiffs bring this action on behalf of themselves and all others similarly situated as a class action pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure.  The class that Plaintiff seeks to represent is composed of and defined as follows:

All citizens of South Carolina who purchased one or more of the following ETCS-i vehicles listed on Exhibit A.  These include, but are not limited to, all citizens that purchased one or more of the following vehicles:

Toyota FJ Cruisers from MY 2007-2008

Toyota Tacoma pickup trucks from MY 2003 through 2008

Toyota Camrys from Model Year (MY) 2002 though 2009

Toyota Highlanders from MY 2004 through 2009

Lexus models from MY 1998 through 2009

Toyota Tundra pickup trucks MY 2000 through 2009

Toyota 4Runner SUVs from MY 2001 through 2009

Toyota Avalons from MY 2005 through 2009

Toyota Land Cruisers from MY 2001 through 2009

Toyota RAV-4s from MY 2005 through 2009

Toyota Sequoias from MY 2001 through 2009

Toyota Siennas from MY 2004 through 2009

Toyota Corollas from MY 2005 through 2009

38.    Excluded from the Class are (a) Toyota Defendants herein, and any person, firm, trust, corporation, or other entity related to or affiliated with Toyota Defendants, including without limitation, persons who are directors, officers and/or partners of Toyota Defendants and any legal representatives, heirs, successors, and assigns of Toyota Defendants, and (b) any Judge assigned to this action, and her or his immediate family.

39.    Excluded from the Class are any individuals who have suffered a bodily injury or wrongful death as a result of a runaway acceleration event.

40.    The members of the Class are so numerous that joinder of all members would be neither feasible nor practical.  The membership of the entire class is unknown to Plaintiff at this time; however, it is estimated that the entire class is greater than 1,000 individuals.  The disposition of the Class members' claims in a class action will provide substantial benefit to the parties and the Court.

41.    Plaintiff's claims are typical of the claims of the Class, and Plaintiff has no interests adverse to the interests of other members of the Class.

42.    This dispute raises questions of law and fact that are common to all Class members, which predominate over questions that arise on an individual basis for Class members.  The common questions of law and fact include, without limitation, the following:

A.    Did Toyota sell, market, advertise, distribute and otherwise place its vehicles utilizing ETCS-i into the stream of commerce throughout South Carolina and the United States?

B.    Did Toyota mislead consumers as to the relative safety of the Toyota vehicles listed above as being equipped with the ETCS-i?

C.    Was Toyota engaged in unfair business practices?

D.    Did Plaintiff and others similarly situated suffer damages?

E.    The extent of damages suffered by Plaintiff and the Class and the appropriate amount of compensation.

F.    Was Toyota unjustly enriched?

G.      Did Toyota act with malice, oppression and fraud so as to justify an award of punitive and exemplary damages?

H.      Are the Plaintiff and the Class entitled to injunctive relief?

43.     Plaintiff, as a representative party, will fairly and adequately protect the interests of the Class and has retained counsel experienced and competent in the prosecution of class action litigation.

44.     The nature of this action and the nature of the laws available to the Class make use of the class action format a particularly efficient and appropriate procedure to afford relief to the Class.  Further, this case involves business entity defendants and a large number of individuals possessing claims with common issues of law and fact.  If each individual were required to file an individual lawsuit, the business entity defendants would necessarily gain an unconscionable advantage since they would be able to exploit and overwhelm the limited resources of each individual plaintiff with their vastly superior financial and legal resources.  Proof of common business practices or factual patterns, which the named Plaintiff experienced, is representative of the class mentioned herein and will establish the right of each of the members of the class to recovery on the claims alleged herein.

45.     The prosecution of separate actions by the individual class members, even if possible, would create: (a) a substantial risk of inconvenient or varying verdicts or adjudications with respect to the individual class members against Toyota herein; and (b) legal determinations with respect to individual class members not parties to the adjudications or which would substantially impair or impede the ability of class members to protect their interests. Further, the claims of the individual members of the class are

not sufficiently large to warrant vigorous individual prosecution considering all of the

concomitant costs and expenses attending thereto.  Plaintiff is unaware of any difficulties

that are likely to be encountered in the management of this action that would preclude its

maintenance as a class action.  Plaintiff anticipates providing appropriate notice to be

approved by the Court after discovery into the size and nature of the Class.

### FIRST CLAIM FOR RELIEF
**(Negligence)**

46.     Plaintiff realleges and incorporates by reference all preceding paragraphs

as if fully set forth herein.

47.     Plaintiff asserts these claims on behalf of herself and others similarly

situated who have expended funds that Toyota should be required to pay or reimburse

under South Carolina law.

48.     Each of the Toyota Defendants participates in a joint enterprise to design,

manufacture, assemble, market, advertise, distribute and sell ETSC-i-equipped vehicles.

Toyota thus has a duty to design, manufacture, and market vehicles that are reasonably

safe for their intended uses, and to provide true and accurate information to the public to

prevent undue risks arising from the foreseeable use of its products.

49.     Toyota was negligent, and breached this duty owed to the Plaintiffs.

50.     The following acts and omissions by the Defendants were negligent:

a.      On the part of each Defendant, failure properly and
adequately to design the Class Vehicles and the systems,
components, and parts thereof, including, but not limited to,
the electronic engine control, the cruise control and other
components of the Engine Control Module, collectively
denominated by the Toyota entities as the Electronic
Throttle Control System-Intelligent ("ETCS-i),   and the
braking system;

b.      On the part of each Defendant, failure properly and adequately to install a fail-safe software component and/or mechanical safeguard against sudden, unintended acceleration;

c.      On the part of each Defendant, failure properly and adequately to specify components and component systems for the Class Vehicles that would shield the sensors from transient signals that confuse the ETCS-i and thereby ensure that the vehicle's throttle responded to the intentions and actions of the driver;

d.      On the part of each Defendant, failure properly and adequately to test the Class Vehicles and the systems, components, and parts thereof, specifically including, but not limited to, the electronic engine control, the cruise control and other components of the Engine Control Module, the ETCS-i and the braking system;

e.      On the part of each Defendant, failure properly and adequately to perform and/or heed an adequate failure mode and effects analysis (FMEA) or fault tree analysis (FTA) of the Class Vehicles and the systems, components, and parts thereof, specifically including, but not limited to, the ETCS-i, the cruise control and other components of the Engine Control Module, and the braking system;

f.      On the part of each Defendant, failure properly and adequately to manufacture, fabricate, and assemble the Class Vehicles and the systems, components, and parts thereof, specifically including, but not limited to, the electronic engine control, the cruise control and other components of the ETCS-i, and the braking system;

g.      On the part of each Defendant, failure properly and adequately to warn of the dangers attendant upon use of the Class Vehicle, specifically including, but not limited to, the extreme risk to the driver and occupants of a loss of control of the throttle and resultant sudden, unintended acceleration of the vehicle, with the attendant risk of severe bodily injury and/or death.

h.      Prior to and during the design, manufacturing, marketing and sale of the subject vehicle and thereafter, the Toyota Defendants knew, or in the exercise of reasonable care should have known, that other feasible and safer

design alternatives were available to them which would have significantly reduced the risk of sudden, unintended accelerations and the lack of efficacy of the braking system under such conditions. Defendants, and each of them, negligently failed to utilize such other and feasible safer designs in their design of the electronic engine control, the cruise control and other components of the ETCS-i, and the braking system in the Class Vehicles;

51. At all times relevant, the Toyota Defendants sold, marketed, advertised, distributed, and otherwise placed the above-listed Toyota vehicles into the stream of commerce in an unlawful, unfair, fraudulent and/or deceptive manner that was likely to deceive the public.

57. The Toyota Defendants' marketing of vehicles containing ETCS-i, without incorporating adequate electronic or mechanical failsafes, and while misrepresenting the dangers of such vehicles to the public, constitutes unlawful, unfair and/or fraudulent business acts and/or practices within the meaning of South Carolina law.

## SECOND CLAIM FOR RELIEF
### (Breach of Express and Implied Warranty)

58. Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth verbatim herein.

59. By marketing, advertising, distributing and selling vehicles containing ETCS-i, without incorporating adequate electronic or mechanical fail-safes, and while misrepresenting the dangers of such vehicles to the public the Toyota Defendants created and breached both express and implied warranties that the vehicle was safe for use as public transportation, when in fact, it was not.

60.     As a result of the foregoing, Plaintiff and the Class have suffered economic damages in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF
### (Unjust Enrichment)

61.     Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth verbatim herein.

62.     Plaintiff and the Class unknowingly conferred a benefit upon Toyota by paying for vehicles which were in fact, unreasonably dangerous for use as public transportation.

63.     The circumstances, as described in this Complaint, are such that allowing the Toyota Defendants to retain all of the benefits provided by Plaintiff and the Class would be inequitable.

64.     The Toyota Defendants have been unjustly enriched at the expense of Plaintiff and the Class and, as a matter of equity, the Toyota Defendants should be required to make Plaintiff and the Class whole in an amount to be proven at trial.

## <u>JURY DEMAND</u>

65.     Plaintiff hereby demands trial by jury of her claims against the Toyota Defendants.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf, on behalf of all others similarly situated and on behalf of the general public, prays for judgment against the Toyota Defendants as follows:

A.     For an order certifying this case as a class action and appointing Plaintiff and their counsel to represent the Class;

B.      Awarding damages to Plaintiff and the other Class members for all causes of action alleged herein;

C.      Awarding restitution and disgorgement as a result of the Toyota Defendants' unfair business practices;

D.      For an order requiring the Toyota Defendants to immediately cease and desist from marketing, advertising, distributing and selling vehicles containing ETCS-i;

E.      All equitable remedies available under South Carolina law;

F.      Awarding attorneys' fees, expenses and costs;

G.      Punitive Damages

H.      Awarding pre- and post-judgment interest; and

I.      Providing such other and further relief as this Court may deem just and proper.


　/s/ Keith M. Babcock
A. Camden Lewis, Fed. ID No.  2669
Keith M. Babcock, Fed. ID No. 1143
LEWIS & BABCOCK
P.O. Box 11208
Columbia, South Carolina 29211
(803) 771-8000
acl@lewisbabcock.com
kmb@lewisbabcock.com

BAILEY & GLASSER, LLP
Benjamin L. Bailey
Eric B. Snyder
Robert P. Lorea
209 Capitol Street
Charleston, West Virginia 25301
(304) 345-6555
bbailey@baileyglasser.com
esnyder@baileyglasser.com
*Pro Hac Vice Motion to Follow*

EDGAR F. HEISKELL, III, ESQ.
P.O. Box 3232
Charleston, WV 25332
(304) 545-5404
hheiskell@att.net
*Pro Hac Vice Motion to Follow*


THOMAS MURRAY, ESQ
Thomas Murray & Associates, Inc.
111 East Shoreline Drive
Sandusky, OH 44870-2517
janetr@murrayandmurray.com
*Pro Hac Vice Motion to Follow*


Columbia, South Carolina
January 29, 2010